*62 OPINION OF THE COURT
Harriet P. George, J.
After trial the court finds from all of the credible testimony and evidence adduced at trial and upon the applicable law as follows:
Respondent Greenpoint Savings Bank received a judgment of foreclosure and sale from the Supreme Court in December 1992. Twenty-nine months later in May 1995, approximately 31/2 months after this proceeding was brought, a sale was held and the premises sold to an entity of said Greenpoint Savings Bank.
It is undisputed that after the judgment of foreclosure and sale and before the actual sale 29 months later, no one from or on behalf of Greenpoint visited or inspected the premises. The premises, a six-family house, was occupied by tenants throughout the said 29 months. No one from Greenpoint advised the tenants of anything including where to send rent and to whom, or where to call for repairs or services. Greenpoint did not file a new multiple registration certificate with the New York City Department of Housing Preservation and Development (DHPD) and did not communicate with the suppliers of fuel, or utilities regarding the address to which bills were to be sent. While no information was presented to the court as to whether insurance on the building was kept, Greenpoint did pay the real property taxes.
In October 1994 the gas company removed the gas meter on the premises for nonpayment of the gas bill and as a result the premises were left without heat or hot water.
Following complaints lodged by the tenants, an inspection was made on December 23, 1994 by an inspector from the Department of Housing Preservation and Development. Violations were placed for lack of hot water and for a locked boiler room. On January 6, 1995, violations were placed for both lack of heat and hot water.
The City of New York replaced the gas meter on January 11, 1995 and heat and hot water were restored as a consequence. On January 20, 1995 this proceeding was brought by the petitioner against Greenpoint Savings Bank and Manuel Rodriguez (the former owner).
Respondent Manuel Rodriguez did not appear and his whereabouts remain unknown. Greenpoint Savings Bank appeared in its defense and claimed that as the mortgagee it had no duty "to cure violations” and it had no notice of the violations *63 placed and therefore it was unconstitutional to require them to do so.
The court finds that Greenpoint’s reliance upon the defense of lack of notice is without merit since there was no filing of a multiple dwelling certificate with the DHPD which would have given everyone concerned notice of where to send notices of violations as well as all other correspondence and communications, during the time period.
As to the defense of being a mortgagee with no responsibility to correct violations, this must also fail as the undisputed facts indicate that Greenpoint was the only one in operation and control of the premises since December 1992 when the judgment of foreclosure and sale was granted in Supreme Court. Their decision to delay the actual sale of the foreclosed property for 29 months was theirs alone. Whether or not this was a business decision in the hope of a more favorable real estate market or merely a failure to act in a diligent fashion is not relevant. What is relevant is that they made no move to sell the property pursuant to the judgment of foreclosure and sale to someone who would take responsibility for the operation and control of a building where people were living.
Respondent Greenpoint’s attempt to defend its failure to enter and inspect this six-family multiple dwelling for the safety and security of those living there because they felt it would be "trespassing” is incredible and not worthy of consideration.
Respondent Greenpoint is in the business of lending money on secured property in addition to its other business activities. The security for the mortgage money loaned is the property itself. Prudent business practice requires that the proposed property be inspected, appraised, and searched for title and other liens or judgments before the mortgage loan is granted. The bond and mortgage will list the rate of interest to be paid and the amount (lower than the market value of the property) of the loan and the terms of the loan including the term in years, and dates for payment of principal and interest. Also included in the said instruments are conditions that the mortgagor pay all real estate taxes on the property as well as other taxes, assessments, water and sewer charges, as well as premiums for insurance covering the property for loss and liability, with the mortgagee bank named in said policies. Proof of all said payments are required to be presented on demand to the mortgagee bank under standard mortgage instruments. Also required is the condition that the mortgagor keep the *64 premises in good repair. All of the above is to safeguard the investment of the lending bank. The mortgage is then filed and becomes a lien of record, which is notice to all of the interest of the mortgagee lending institution.
Upon full compliance with the terms of the mortgage by the mortgagor, the mortgagee is in receipt of the profit it seeks which is the sole reason for the issuing of the mortgage loan initially. Where, as in this building, the mortgagor defaults, a foreclosure proceeding is brought to enable the mortgagee to safeguard its investment by divesting the defaulting owner of control and operation and by selling the building at auction pursuant to the judgment of foreclosure in order to retrieve its financial investment. A receiver may be appointed to collect rents and pay the expenses of the building pending the sale at auction. If the mortgagee bank bids on the property at the auction sale it can hire a management company to run the building, until a sale to a third party can take place.
All along the way the bank’s investment is protected. It is up to the bank to examine its records and inspect the property during the term of the mortgage and to act swiftly to foreclose upon default and move swiftly and diligently to protect its investment, so that the value of the property is not impaired. The delay in setting a prompt date for the auction sale is inexcusable given the admission that the bank never inspected the premises or notified the tenants or the required authorities, as to their mortgage. They never demanded rent or sought to have a receiver appointed pending the sale. Inherent in the whole foreclosure process is the theory that the secured party has the right to secure and protect the property so that the value of its investment is not impaired. In addition, the safety and health of the building’s occupants should be safeguarded so that any liability for harm caused by neglect does not result in loss of the building through fines or court awards for damages. The theory is premised upon the belief that to leave the premises in control and operation of the defaulting mortgagor will cause the building to be lost or destroyed and the investment ruined.
Greenpoint by its own conduct was no better than the prior owner Rodriguez who abandoned the building and its occupants.
Greenpoint had only one interest on their minds after the judgment of foreclosure, and that was to pay the real estate taxes. The building was ignored and left unattended. Green-point’s defense that petitioner could have had a RPAPL article *65 7-A administrator appointed by bringing a proceeding in the Housing Part of the Civil Court is well taken except that for two years the petitioner was unaware of the condition of abandonment by Greenpoint after the foreclosure judgment and before the sale. Until the violations were placed, DHPD knew nothing of the hardship of the occupants who were without heat and hot water for four months. The petitioner in bringing this proceeding gave the two respondents the chance to retain control, Greenpoint as a presumed interested party and mortgagee, as well as the supposed owner Manuel Rodriguez who as far as the petitioner knew was still the owner and the bank still a mortgagee with no control. Perhaps, if the petitioner had known the true status of the respondents and the foreclosure and delayed sale, it may well have sought an administrator. Why the respondent would consider appointing an administrator as a better course of action escapes the court.
The mortgage business is one where the lender must weigh the consequences of the loan. In the event of a default, the bank must act not only to safeguard its financial investment but to safeguard the lives and safety of those who occupy the building. Greenpoint had a duty to inspect and secure the building and to seal off any vacant apartments as well as areas exposed to the weather, vandalism and criminal activity. It had a duty to provide essential services to those living in the apartments and to collect rent to defray the expenses while deciding what to do with the building. The testimony showed the plight of the tenants of the building. It is fortunate that no one was seriously injured or hurt in any way other than by the lack of heat and hot water and that the building stayed intact and remained viable and that the pipes did not freeze during this time. The building only needed the gas meter to be reinstalled to alleviate the cold and unhealthful conditions caused by no heat and no hot water.
Respondent’s arguments and defense of its conduct are reminiscent of the attitude of King John of England before the outraged barons presented the Magna Carta to him at Runnymede.
As the respondent Greenpoint’s defenses are untenable and the facts are unrefuted, the court agrees with the legal argument as stated by petitioner and finds that petitioner has proven its prima facie case in that respondent failed to provide hot water from December 23, 1994, the date of the first violation placed for lack of hot water, to January 1, 1995 when the gas meter was replaced by the City for a total of 19 days and *66 petitioner is entitled to a fine of $250 for each of said 19 days of lack of hot water; and that respondent failed to provide heat from the date of the violation placed on January 6, 1995 to January 11, 1995 when the gas meter was replaced by the City for a total of six days of no heat and petitioner is entitled to a fine of $250 per day for each day, for a total 25 days’ civil penalties at $250 for each day plus a statutory fine of $500 for the failure to file a multiple dwelling registration certificate with the New York City DHPD as required, and petitioner is entitled to judgment therefore.